No. 12,990.

STATE EX REL R. F. & J. C. BROUSSARD VS. HON. FELIX VOORHIES, JUDGE NINETEENTH JUDICIAL DISTRICT COURT.

## SYLLABUS.

Article 126 of the Constitution of 1898 only confers appellate jurisdiction on District Courts from judgments of justices of the peace in criminal matters.

Possessing no appellate jurisdiction over judgments of a justice of the peace for the amount of one dollar or less, a district judge is without constitutional warrant to place an interpretation thereon inconsistent with the plain terms and tenor thereof.

### ON REHEARING.

1. Article 111 of the Constitution of 1898 provides that judgments in civil causes are appealable from Magistrate's Courts to the District Courts without regard to the amount in dispute.

2. But judgments rendered by justices of the peace more than twelve months prior to the adoption of that Constitution are not affected by the provisions of that article, not even where such judgments are involved, or sought to be affected, in proceedings for prohibition and certiorari applied for in the District Court since the adoption of the Constitution of 1898.

3. A district judge may issue writs of certiorari to justices of the peace only in aid of his appellate jurisdiction, and he transcends his authority when in a case in which he has no appellate jurisdiction he interprets the judgment therein rendered to mean that a certain one of the defendants is not liable under the judgment.

ON APPLICATION for Writs of *Certiorari* and Prohibition.

*Foster & Broussard* and *J. L. Haase,* for Relators.

---

Respondent Judge *pro se.*

---

Submitted on brief December 5, 1898.
Opinion handed down December 19, 1898.

Rehearing granted January 9, 1899.
Submitted on Rehearing January 14, 1899.
Opinion handed down on Rehearing February 20, 1899.

---

The opinion of the court was delivered by

WATKINS, J.   This controversy grows out of the proceeding in the respondent's court, entitled State *ex rel.* Gonsoulin vs. J. A. Babin, Justice of the Peace *et al*—the complaint of relators in *this* proceeding being that respondent *therein,* in effect, annulled and reversed judgments of said justice, of which he possessed neither supervisory nor appellate jurisdiction, and in violation of their rights as plaintiffs and appellees in respondent's court.

The history of this litigation is fully related in State *ex rel* Babin vs. Voorhies, Judge, 49th Ann. 1717.

It appears from our opinion in that case, that relators herein instituted suit and obtained judgment against the relator, (in State *ex rel* Gonsoulin vs. Babin, Justice), for the sum of seventy-six dollars, which was appealed to the court of the respondent in this proceeding; and that said respondent first rendered a judgment reversing that appealed from at plaintiff's costs and remanding same for execution, and thereafter so amending said decree as to allow plaintiffs therein, relators here, to make the cane-growers parties to the suit, contradictorily, with whom the proceedings were to be carried on—this decree closing with the phrase, viz.: "the court, therefore, grants the new trial for the purpose of remanding the cause to the lower court for further proceedings."

It further appears therefrom, that, on the return of said cause to the justice court, the plaintiffs therein, relators here, voluntarily discontinued same by entering non-suit, and immediately thereafter instituted one hundred and forty-three suits before the same justice of the peace, in each of which one of the cane-growers, and the original defendant, Gonsoulin, were made co-defendants *in solido*—the said cane-growers being the same persons who are referred to in the respondent's aforesaid decree.

That, in each one of those suits, the amount in controversy was below the lower limit of the respondent's appellate jurisdiction; and in each of same an absolute judgment was rendered by said justice of the peace for the amounts respectively demanded against both defendants *in solido,* and for costs.

That, at this stage of the proceedings, Gonsoulin applied to the respondent judge herein, in the case entitled State *ex rel* Gonsoulin vs. Babin, Justice, for writs of *certiorari* and prohibition, upon the allegation that the respondent, Babin, Justice, had rendered the aforesaid one hundred and forty-three judgments in direct disregard and violation of his own decree remanding the cause as aforesaid—alleging that he had enjoined the execution of the judgments in said suits in said justice court, and that his injunction had been dissolved.

That, at this stage of the proceedings, relator, Babin, applied to this court for *certiorari* and prohibition, on the ground, that the respondent's court was without jurisdiction to entertain Gonsoulin's application, because he had no appellate jurisdiction of the suits and judgments he complained of.

It further appears from our aforesaid opinion, that we held as follows, viz.:

"The District Court, having the power to supervise its own judgments, and the case of R. F. and J. C. Broussard vs. Adrien Gonsoulin, having been before it, and a judgment therein rendered, we think it was within the competency of that court on the application to it of the defendant, Gonsoulin, declaring that the judgment in question was being executed in a manner different from its terms, or, that it was being actively violated by the justice court wherein it originated, and to which it was remanded, to order the justice of the peace to send up his records for examination, with a view of ascertaining what the legal situation was, to the end that such action should be taken as the law and facts of the case authorized, and that it was the duty of the justice to comply with that order.

"Whether the District Court would be justified or warranted, after examination, in making writs of *certiorari,* or prohibition, which it caused to issue to the justice, peremptory in a particular case, is a different question from whether it *had jurisdiction to simply make inquiry through such writs into the subject matters complained of. Jurisdiction is the power to judge—it includes the power to judge wrongly as well as rightly.*

"We do not think relator warranted in asking relief at our hands in the *present situation* of affairs.

"The District Court having power to send writs of *certiorari* and prohibition to justices of the peace in a certain class of cases, when its jurisdiction to that end has been invoked in a particular case, as being

one of that character, they are entitled to issue tentative writs and to *primarily* determine whether that jurisdiction legally extends to the ultimate affording of the relief asked. Relator had a right to raise the issue he did, as to the power of the District Court, and to have that court *pass on that exception;* but none the less he should have produced and *submitted* his records as ordered, and *made his return* or answer and *enabled the issues raised to. be determined.*

"*Should* the *(judge) reach an illegal conclusion as to his powers* and *duties in the particular case, it will be time enough to have recourse to this court.* State *ex rel* Kirsch vs. Judge, 45th Ann. 1206."

In pursuance of the foregoing instructions, and very careful and guarded interpretation of the law, the respondent herein proceeded with the trial and determination of the aforesaid cause in his court, entitled State *ex rel* Gonsoulin vs. J. A. Babin, Justice of the Peace; and it is of his finding and judgment in that case, that the relators, as *plaintiffs* and *appellees* in the sundry cases on appeal in his court, make complaint and demand relief at the hands of this court.

They make extracts from the respondent's decree, and broadly allege "that in rendering said judgment, the district judge is in flagrant violation of the law and constitution of the State; and, after admission on his part, that he could entertain no jurisdiction under proceedure for writs of *certiorari* and prohibition, except in aid of his appellate jurisdiction, reversed the judgments of the justice of the peace, and, at the same time, dissolved his own writs primarily issued."

The portion of the judgment of which the relators complain is as follows, viz.:

"A careful examination of the books of the (respondent) shows that the court has made a serious mistake *concerning* the judgments rendered by (him) in the 143 cases of R. F. Broussard *et als.* vs. Adrien Gonsoulin, the relator, and others. In its former decree, the court stated, that only two of these cases had been finally adjudicated upon, and that in the 141 remaining cases, new trials had been granted. * * * This was an error. In all these cases, the new trials have been refused, and as a sequence the *original judgments rendered remain unaltered.*

"A judgment rendered is revised or amended by the granting of a new trial. The refusal to grant a new trial leaves the judgment rendered unchanged. C. P. 557; 563.

*"It follows from this; that there is no personal judgment against the relator (Gonsoulin) except for the two per cent. retained by him for his co-defendants against whom only there is an absolute judgment, with costs.*

"It follows again from this, that the (respondent) *has complied with the order of this court by relieving relator,* (Gonsoulin) *of all personal liability in this matter, and that there is no necessity for* the writs of *certiorari* sued out in this case." (Our italics).

Particular attention is directed to the italicized portions of the judgment.

On this point, the statement of the relators Broussard, is as follows, viz.:

"That your relators, availing themselves of the law, the said case was dismissed by them in the justice court, and new suits instituted, after the costs (of the first suit) had been paid, against Adrien Gonsoulin, and the said 143 cane-growers, each for the sum due by them under said contract.

"That before the trial of the said cases, the said Adrien Gonsoulin, and each of said cane-growers, appeared in court and filed a general denial. That upon trial had, judgment was rendered against each of the said cane-growers, and the said Adrien Gonsoulin *in solido,* and in favor of your relator in each and every one of said 143 suits.

"That in none of said cases was there an amount involved sufficient in law to authorize an appeal to the District Court.

"That, after judgment had (been obtained) by your relators in said 143 suits, the said Adrien Gonsoulin appealed each and every one of them to the District Court.

＊     ＊     ＊     ＊     ＊     ＊     ＊     ＊     ＊     ＊     ＊     ＊

"That when attempt was made by relators to execute said judgments, resort was had by said Adrien Gonsoulin to the District Court through writs of *certiorari* and prohibition, etc."

On this state of the record, relators complain of the respondent's decree, that, notwithstanding he has no appellate jurisdiction of any one of said 143 judgments, and for that reason no jurisdiction to alter, amend, revise, or change any one of them in the slightest particular, he has, under the pretext of *interpreting them,* actually annihilated them all, altogether, by holding that they do not adjudge Gonsoulin *personally* to pay said sums and costs, whereas the judgments themselves show an exactly contrary state of facts.

In the case of State *ex rel* Babin, justice of the peace, vs. Voorhies, Judge, 49th Ann. 1717—from which we have made extracts—the position was taken and response made, that the respondent possessed appellate jurisdiction of the original case of relators against Gonsoulin; and that in the exercise of that appellate jurisdiction, he had reversed the *personal* judgment which had been rendered in the justice court, and remanded same to the said court with instructions to make the 143 cane-growers parties thereto.

In the case of State *ex rel* Gonsoulin, vs. Babin, justice of the peace, in respondent's court, relator's complaint proceeded on the theory that, in point of fact, the one hundred and forty-three judgments which had been rendered against him were the same as the original judgment.

But, from the foregoing extracts from the decree of the respondent in that case, it clearly appears that he abandons that theory altogether, and, admitting that the original suit had been discontinued in the justice court, and 143 distinct and different suits had been instituted therein, in its stead, and that separate and unappealable judgments had been therein rendered and appealed to his court, he places his judgment exclusively upon an interpretation of said decrees; and finding that same are *not personal* judgments against Adrien Gonsoulin, and, for that reason, in exact conformity with his decree in the original suit, he *dismisses Gonsoulin's writ* as unnecessary.

In order to see what is the form of those judgments, we transcribe one of them for the purposes of illustration, viz.:

"State of Louisiana | Third Ward
  "Parish of Iberia, | Justice Court,
  "R. F. Broussard, *et al.* | No. 231.
      vs.
"Adrien Gonsoulin and Antoine Zepherine.

"For the reasons urged in the motion for new trial, the judgment rendered herein is hereby amended so that there be judgment against Adrian Gonsoulin and Antoine Zepherine *in solido* for *sixty-one cents,* with costs on both parties.

"For these reasons new trial refused.

"Thus done, read and signed this 3rd day of March, A. D., 1897.

                      "J. A. BABIN, J. P.

"March 3rd motion of appeal made and granted.   Appeal bond fixed at $15.00.

"J. A. BABIN, J. P."   (Our italics).

An examination of all the other judgments shows that they are exactly identical with the one above quoted; and that they are rendered against the defendants, Adrien Gonsoulin, and another *in solido,* "with cost on both parties"—the amounts for which judgments are therein rendered varying from *thirty-five cents to ninety-eight cents,* the distributive or proportionate shares of the one hundred and forty-three cane-growers in the seventy-six dollars claimed.

To plainly indicate the precise status of these cases, we make the following extract from the opinion of the respondent as judge in the Gonsoulin case, viz:

"A careful examination of the books produced in court by the res-"pondent (justice) discloses the fact that the 143 suits brought by "R. F. Broussard *et al.* are instituted against the identical parties "who have been ordered by this court to be made parties in the case of "R. F. Broussard *et al.* vs. Adrian Gonsoulin, No. 76 of the docket of "the inferior court, which case was remanded by this court to the "inferior court for that special purpose.

"It is also in evidence, that instead of protesting against the judge's "action in parcelling out the original case No. 76, into so many cases; "and instead of interposing the plea of *res adjudicata* in so far as he "was concerned, the relator filed a general denial and joined issue on "the merits of each one of these cases.

"The amount involved in each one of these cases was not large "enough under the Constitution of 1879, to give appellate jurisdic-"tion to this court; but   *   *   *   under the law as it is now (Const. "of 1898, Art. 126), the District Court has appellate jurisdiction of "these 141 cases."

Hence, in the two judgments that the respondent herein rendered in the Gonsoulin case, he not only sought to destroy said 143 judgments in a proceeding to which the relators as plaintiffs were not made parties, by a judicial interpretation, as they allege, but he sought to shield said interpretation by the supposed appellate jurisdiction which the Constitution of 1898 had conferred upon justices of the peace; but the language employed in said judgments disprove the respondent's decree to the effect that the justice of the peace had "*relieved relator* (Gonsoulin) *of all personal liability,*" and the article of

the Constitution of 1898, on which he relies, has exclusive reference to criminal matters.

It is therefore clear (1) that possessing no appellate jurisdiction of said 143 judgments, he was wholly without power to annul or reverse them; and the terms of said judgments being plain and unmistakable, his interpretation of them must yield thereto.

Inasmuch, as the respondent herein has judicially admitted, that the original suit for $76.00 had been voluntarily discontinued by the relators, and the 143 suits substituted therefor, and that the defendant Gonsoulin had appeared therein and filed an answer and was conclusively bound thereby, the theory upon which we decided the case of State ex rel. Babin vs. Voorhies, Judge, has been materially modified—same being that the relator Gonsoulin complained that the $76.00 judgment was being executed in a manner different from its terms and therefore actively violated, when, in point of fact, same had been set aside, discontinued and altogether abandoned, and the 143 suits and judgments substituted therefor.

We declined to grant relator, Babin, relief at that time, and required him to comply with the judge's order and send up his records "with a view of ascertaining what was the legal situation, to the end that such action should be taken as the law and the facts of the case authorized, etc."

We regarded the case presented as belonging "to that class or character of cases which justified the respondent therein to issue tentative writs, and to primarily determine whether his jurisdiction legally extended to the ultimately affording of the relief asked."

But, having fully satisfied ourselves, that the respondent exceeded the bounds of his jurisdiction within the limits fixed (1) in assigning Article 126 of the Constitution of 1898 as the source of his appellate jurisdiction; and (2) in placing an interpretation upon the Justice Court judgments that was wholly unwarranted by their terms, and beyond his constitutional warrant, we feel bound to declare his judgment illegal and void in so far as same may prejudice or affect the relators' rights in any way, and to maintain and make peremptory the writs of *certiorari* and prohibition.

It is therefore ordered and decreed, that the preliminary writs of *certiorari* and prohibition be made peremptory at the cost of respondent.

NICHOLLS, C. J., absent.

## ON REHEARING.

BLANCHARD, J.  In the opinion hereinbefore handed down it was held that respondent judge exceeded his authority in making inquiry into the proceedings of the Magistrate's Court culminating in final judgments in the 143 suits brought in that court by relators herein against Gonsoulin and others, for the reason that with respect to those cases the District Court in and for the Parish of Iberia was not vested with appellate jurisdiction, and it was stated in that connection, that article 126 of the Constitution of 1898, which alone was cited by respondent as the source of his appellate jurisdiction, did not bear out his contention, since it only confers jurisdiction on District Courts from judgments of justices of the peace in criminal matters.

It was further held that respondent judge, in inquiring into the proceedings in the Magistrate's Court, had placed an interpretation upon the judgments rendered there, in the cases mentioned, unwarranted by their terms and beyond his constitutional authority, and the decree of this court, operating through its writ of *certiorari* which had been invoked, declared the action of the respondent judge aforesaid illegal and void in so far as the same prejudiced or affected relators' rights in and to the judgments rendered in their favor in the Magistrate's Court, or fettered or hindered relators in the due execution of said judgments.

Accordingly, to this extent and for this purpose, the writs of *certiorari* and prohibition, which had issued *nisi,* were made permanent and peremptory at the cost of the respondent.

In his application for the rehearing which the court granted, he urges that the opinion heretofore handed down misconstrues the judgment he had rendered in the proceeding taken in his court on the application of Adrien Gonsoulin for writs of *certiorari* and prohibition against J. A. Babin, justice of the peace, and gave to the said judgment an effect and force not intended by him.

He insists that the only judgment rendered by him was a decree vacating the writ of *certiorari* sued out by Gonsoulin, and that this court, in its opinion, mistook part of *the reasoning* preceding his decree in the Gonsoulin case, for the decree, or part of the decree, itself, and, predicated on this error, has decided the instant case to his prejudice.

In this connection, his contention is that by vacating the writ of *certiorari* in the Gonsoulin case he left the justice of the peace free to proceed according to law in the 143 original cases in which judgment had been rendered by said justice of the peace, and that this being so, he cannot see how it can be held he has prejudiced relators herein, or deprived them of any rights they may have under the Constitution and laws.

To determine these contentions of our brother of the District Court, it is necessary to ascertain just what he did decide in the Gonsoulin case, and whether, or not, he has interfered with the judgments in the 143 cases in the Magistrate's Court, or hampered or impeded their execution in any way, and if so, to what extent.

If his determination of the Gonsoulin case affects those judgments, or their execution, then a proper case was presented to this court for its supervisory control, for nothing is clearer than that a District Judge may issue writs of *certiorari* to justices of the peace only in aid of their appellate jurisdiction. State *ex rel.* Hirsch vs. Judge, 39th La. Ann. 97; 37th La. Ann. 285.

Under the Constitution of 1879, cases where the amount claimed was ten dollars or under were not appealable from Magistrate's Courts to the District Courts, and in each of the 143 cases brought by relators herein in the Magistrate Court of Justice Babin against Gonsoulin and others, the amount was less than ten dollars.

Those cases rest upon the Constitution of 1879, for judgments in them all were rendered on March 3, 1897, while that Constitution was in force.

While the Constitution of 1898, Article 111, provides that all judgments in civil causes are appealable from Magistrate's Courts to the District Courts without regard to the amount in dispute, that Constitution did not go into effect until May 12, 1898, or more than fourteen months after the rendition of the judgments in the 143 cases aforesaid.

It is clear, therefore, that the question whether or not respondent judge had appellate jurisdiction warranting him in an inquiry into the proceedings in the Magistrate's Court in the suits against Gonsoulin and others there instituted was to be determined under the Constitution of 1879 and not that of 1898. And since, under the former Constitution, he was possessed of no appellate jurisdiction in any of those cases, it follows that he could not lawfully issue his writ

.of *certiorari* to inquire into the proceedings leading up to the judgments therein rendered, and that having issued the same improvidently and subsequently realizing this, the only order for him to then make, or judgment to render, was one vacating the writ and dismissing the proceedings before him.

Has he done more?

We held in the first opinion handed down herein that he had, and a careful review of the case on this rehearing has but served to convince us of the correctness of the position then taken.

On the 26th of November, 1898, there was filed in respondent judge's court his final opinion and decree in State *ex rel.* Gonsoulin vs. J. A. Babin, justice of the peace, being the proceeding wherein he had issued his writ of *certiorari* to review the action of the Magistrate's Court in the 143 causes which had been instituted there against Gonsoulin and others by relators herein.

In that opinion he distinctly held that in the 143 cases in the Magistrate's Court no personal judgment had been rendered against Gonsoulin "except for the 2 per cent. retained by him for his co-defendants," and that against these co-defendants only, and not against Gonsoulin, was there "absolute judgment for costs."

He distinctly held further, that the justice of the peace, respondent in that case, had complied with the order which he (the judge of the District Court) had theretofore issued "by relieving relator (Gonsoulin) of all personal liability," and, for *this reason,* he decided there was no necessity for maintaining the writ of *certiorari.*

Accordingly, he discharged the writ, using this language, being the final sentence of his judgment and decree, viz:—

"The former decree of this court discharging the writs (of *certiorari* and prohibition) and setting them aside at relator's costs is, therefore, correct, and the granting of a new trial is unnecessary for the purpose of confirming the same, *inasmuch as the relator* (Gonsoulin), *not being personally responsible* in those 143 cases decided by the respondent judge (the justice of the peace), has no ground for complaint."

This was an intimation, a warning, a direction to the magistrate that in the execution of the 143 judgments rendered by him he was not to hold Gonsoulin to the full liability which the judgments on their face imported, and, thus, was an interference with their execution.

It is patent that had the judge not thought Gonsoulin was without personal liability in the judgments rendered in the 143 cases, he would have made the writs permanent.

And it is equally apparent that he could not reach a conclusion as to his liability or non-liability without interpreting and passing upon the 143 judgments aforesaid, and this is precisely what, under the law, he had no power to do through the writ of *certiorari*, for he had no appellate jurisdiction over the cases and could only resort to the writ in aid of such jurisdiction attaching to his court.

The judgments in the 143 cases, as shown in our first opinion, were against Gonsoulin, and the other parties sued, *in solido*, both for the amounts claimed and for costs, and when the district judge assumed to say and to hold that such judgments did not condemn Gonsoulin personally for the amounts thereof and for costs, he made himself liable to the writ of *certiorari* which went forth from this court to supervise his proceedings in the case then before him and to correct his orders and judgments in those particulars wherein they transcended his authority under the law.

For the reasons assigned it is ordered that the decree of this court hereinbefore rendered remain undisturbed.